Thank you, and I would like to reserve five minutes if I could. Please stop short of using the whole 20 minutes. I will try. Again, my name is Rebecca Pennell. I'm appearing on behalf of the petitioner appellant Elias Gonzalez. Elias Gonzalez was convicted of first-degree premeditated murder, even though the person that he killed was someone barely known to him. And even though at the time of the offense, Mr. Gonzalez had a blood alcohol content of over 0.31. And so you ask yourself in looking in this case, how can that happen? And how that happened, I surmised, is because there was precious little evidence presented to the jury regarding the significance of the blood alcohol content. When did his own lawyer find out that he had that blood alcohol level? Again, there was no evidentiary hearing that ever took place once the ineffective assistance claim was made in the state courts, and no evidentiary hearing at the district court. But from what I can tell from looking at the discovery, it was apparent early on. The reports that were made in the case indicated there was a lot of drinking going on the night of the offense. The attorney indicated from the very first court appearance that he had a volume of reports that he had reviewed. I can't conceive of him not being aware as of December of 1991, right after the offense occurred, that drinking had been involved. His client, of course, was taken to the hospital right after he was arrested. And at that point in time, a search warrant was ordered requiring the medical practitioners at the hospital to take a blood sample. And one of the things they did with that blood sample was to test it for blood alcohol content. I can't imagine that Mr. Gonzales' attorney didn't know about that from the very beginning. And nevertheless he waited until a couple of weeks before trial when State disclosed a toxicology report to conduct any sort of investigation in that regard. Why does that make a difference? It makes a difference. He did conduct an investigation. He was he had a psychiatrist online who was going to examine this person. Apparently a person who is very well respected by both the prosecution, the defense, the courts. And he said, you know, I need a little continuance to do it. And the court said, in effect, I don't give it to you. And the prosecution said, we think so, too. And the client said, nope, I'd rather go to trial than have this wonderful psychiatrist. So. And I think, again, that's we need an evidentiary hearing on that. Excuse me? I think we need an evidentiary hearing on that. But it's. But we have the transcript and we know exactly what was said at the trial. They asked for it. They told the client. The client said, nope, I'd rather go to trial than have this wonderful psychiatrist. That's what he said. That is what he said. They need an evidentiary hearing to know that. What we need the evidentiary hearing for is to find out the way in which that late disclosure and the late investigation. The late both the late disclosure by the state of the toxicology report and the lack of investigation by the attorney. Those two things work together. How that impacted the attorney client relationship. I think that Brady and its progeny stands for the rule that the state has the obligation to disclose information at a time when it can make a difference. I looked at the briefing on the ineffective assistance and such. I don't see an argument made there that the problem was a breakdown in the attorney client relationship. I see an argument made that counsel was ineffective for not having done the investigation earlier. That's what I see as the argument before us. And my question to you is, that being so, it seems a little bit difficult to see why ineffective assistance results in prejudice, where you have a client where there's no question. Everybody knows the problem going in. I'm not talking about a client who doesn't have the information and says, gee, if only he'd investigated it, I'd have known it. We're talking about a client who knows what the problem is. He's told the problem. It's perfectly clear in the transcript. He says, nope, I'd rather go to trial. How do you deal with that? There certainly are the two prongs, of course, to the Strickland standard, whether or not the attorney's conduct fell below general standards and whether or not there was prejudice. And our claim for prejudice is twofold, that there was a breakdown in confidence between the lawyer and client and that that breakdown caused Mr. Gonzalez to not follow his attorney's advice to ask for a continuance. How can it fall below the Strickland standard when the lawyer, he's not sharp, he's not paying enough attention, but he knows before trial. He's found it out. He knows the problem. He gets the premier psychiatrist ready to go. And the only question really is, will the client give some more time so that this person is put on, so that I can put on the evidence that I know should be put on? And the client says, nope, no more time. We're going to trial. How does that become ineffective assistance? What's ineffective about that? Well, I certainly think that there needs to be further information with respect to an evidentiary hearing. But I do think there's... Well, you keep saying that. But I'm saying, what's ineffective? Is it the fact that he couldn't get the psychiatrist on two weeks' notice? Is it that he, that the psychiatrist wasn't going to be good enough? What's ineffective about that? Because we're not dealing with a court that's saying, I'm sorry, Turkey, you didn't do it soon enough, you're going to trial. We don't have that kind of situation here. So what's ineffective about it? What's ineffective is waiting so long to do any sort of work on behalf of your client. I know myself, that's generally the work I do, is I do trial work. And... Well, but you see what Judge Fernandez is saying is all right. But let's assume that was a problem waiting so long. It was curable when the lawyer did find out about it. So the prejudice doesn't really come from waiting so long, except for your argument that, well, that led to a breakdown in attorney-client relations. But a breakdown in attorney-client relations, I never heard of that as a ground for ineffective assistance. Especially, I think, the remedy for that is to ask the court to appoint another lawyer, which he never did on that ground, did he? That there was a breakdown? He asked for another lawyer and the court denied. On the ground that there was a breakdown? Yes, there was. So isn't that a different claim than ineffective assistance? I believe that's a different claim, but I think it's evidence of the extent to which Mr. Gonzalez clearly had lost all faith in his attorney. There was no rational reason for him to say, I don't want to put on an expert, other than the belief that this attorney, I can't trust this attorney at all. Because this attorney hasn't been doing anything for me in the months that this has been pending, even though we've known that this is an issue. And he said this to the court. How am I supposed to believe him that this is in my best interest? He's a very simple man who doesn't understand the legal system very well. All he knew is he had a right to a speedy trial, and the lawyer had done so little to engender any trust in him that he did not want any further to follow that lawyer's advice because he didn't see it going anywhere. I do think that that meets at least the standard for an evidentiary hearing. Evidentiary hearing to discover what? See, that's the problem. The problem is the argument you're making to us now is something like, well, an evidentiary hearing to establish that there was such a breakdown in the current client relationship that he was entitled to a new attorney. I mean, that's where that goes. Where does that go to? That doesn't go to ineffective assistance. The counsel is perfectly effective. He's ready to go. He knows exactly what needs to be done, and the client won't let him do it. It's not a Lambrigan case, for example. It's not a case where the client doesn't know what the problem is. He knows the problem. He just won't. I do think, though, that lawyers' general standards of competency require a lawyer to gain their client's trust and to follow through on promises to their clients and to investigate the case. Do you have any case that says that if the client doesn't trust you, you're now ineffective? That's pretty interesting. Well, there are the line of cases, of course, from this Court that indicate that if there's a breakdown in communication, that that's a reason for appointing a new lawyer, and I think that those go hand in hand. Of course, the standard is, does the lawyer's actions fall below general standards of competency? I know for myself, if I were to go into trial court and say a couple weeks before trial in a matter that I had just discovered an expert, I wouldn't have expected any of the judges in my district to think that that's competent behavior on particularly such a serious case. That's a different kind of competence, though. That's the kind of competence that we judges get really irritated, especially trial judges, when a lawyer comes bumbling in and says, gosh, I should have done this four weeks ago, but I'm just getting around to it now because the way I do my tickler system, I do everything at the last minute. Judges get a little bit uptight about that sometimes. But that's not the kind of competence we're talking about in IAC, I don't believe. I think that it is, and I realize that it's pushing the issue a bit. But I do think that a lawyer has the obligation to investigate a case and work on a case to the level that the client doesn't lose so much confidence as occurred in this case. And, of course, there is the two issues we've just been talking about, the ineffective assistance of counsel claim. There's also the late disclosure of this discovery notebook. And the Court of Appeals in Washington, as well as the district court, passed on that claim without ever knowing what the contents of that discovery notebook was. So knowing how that might have impacted the case and the investigation of the case. You know, this then really takes us back to the standard under the Anti-Terrorism Act. There might be cases on both sides of this argument about failure to get along with your client. And I don't know that the Supreme Court has ever addressed ineffective assistance in those terms, has it? Well, under the AEDPA, as far as questions of law goes, it is the Supreme Court that sets them. But that's set by Strickland. Nevertheless, the AEDPA does allow this Court to review findings of fact by the State courts that are unreasonable. The State court concluded in the appellate court decision that it was that the trial counsel was not dilatory in looking into the need for an expert. I believe that's an unreasonable conclusion, given the record in this case. He was. And so the conclusions of the State appellate court were not reasonable, and that standard of review is still allowable. The other issues that are important for this case are the ineffective assistance of counsel on appeal and this denial of a speedy trial or speedy appeal right. On the ineffective assistance of counsel at appeal, how explicitly was that raised by your client in his pro se petition? In other words, what did he ever say to the State supreme court? I had ineffective assistance on appeal. I know he said I had ineffective assistance, and I know he cited the Sixth Amendment. But did he ever say to the State supreme court, I had ineffective assistance on appeal? Yes. He said, Petitioner's right to the effective assistance of counsel on appeal did not meet the standards envisioned by the Sixth and Fourteenth Amendment to the United States Constitution. Are you reading from his pro se petition? Yes, Your Honor. And. Is that to the court of appeals? That was to the Washington State supreme court. The State supreme court. But then he doesn't give them any argument. He just says, I hereby incorporate by reference what I said in the court of appeal. And I thought we said that's not quite good enough. He incorporated by reference. But there's two issues there. The State has indicated that there's rules against that and there's case law against that. And none of the cases cited by the State stand for that proposition. I think that the Supreme Court's decision in, I don't know if they call it Baldwin or if they call it Reese. But it's one where they reversed my Ninth Circuit opinion. Seems pretty clear on what the rule is. Well, the rule certainly is that the State supreme court does not have to look through prior decisions in order for a claim to be exhausted. Our position here, though, is that the State supreme court did. It's particularly telling if there were two denials of review in this case, one of the direct appeal and one of the personal restraint petition. With the direct appeal, the court issued a summary denial of review. With the PRP, the personal restraint petition, where the ineffective course of appellate counsel claim was made, they issued a two-page decision, more or less, indicating that they did review the decision of the court of appeals. And so I don't believe at all that Baldwin v. Reese. They said we've reviewed the thorough decision or something like that. Or they referred to the claims were decided in a thorough petition. But they didn't really say that they reviewed the particular issue of ineffective assistance. Though that issue was discussed. Right. That issue was discussed by the court of appeals. I understand that. But the State supreme court did not say we have reviewed the issue of ineffective assistance. They did not do that. In the Federal Constitution. We know that the law says even if the litigant, if the appellant doesn't exhaust the claim, if it's actually discussed by the court of appeals, that that will be adequate to give us jurisdiction. But if it's not discussed by the court of appeals and they just say we've read, you know, that there's a thorough opinion below, where does that leave us in light of Baldwin v. Reese? I think that they just need to be put on notice. And they were, in fact, put on notice because they said that they actually did read that decision. Nor did they invoke. They don't say that. They say you do not sufficiently explain or show how you do not sufficiently explain or show how the stuff you're giving us now undermines the court of appeal. That's another that's a rubric for saying you're .9 where you say, well, they it's ineffective assistance of counsel. Please see 20 pages. They say you haven't sufficiently explained it. I don't see why that means we reviewed it all. It just says you haven't done it. You haven't done your job. I think that they said they didn't disagree. They didn't disagree. And furthermore, they didn't invoke procedural error as a reason for denying the petition. They just said substantively we don't disagree with the court of appeals. Just briefly, and I would like to reserve my time, as far as the delay on appeal, the State takes the position that that's not a clearly established rule. Certainly, once the State provides an appellate right, it has to comport with due process. And if due process means anything, as the Supreme Court says in Matthews v. Eldridge, it is that process is to occur in a timely manner, in a manner that is timely. And, of course, if the appeal occurs so slowly that a person is prejudiced, such as things being lost, transcripts now can't be made, that is prejudice and an appeal process that isn't timely, and that is certainly well established under the AEDPA standard, Supreme Court in Yarborough v. Alvarado indicated that even though we haven't maybe addressed the exact facts of a certain claim before, certain principles of law are so fundamental that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt. I think it's beyond doubt, particularly given the court, this Court's case law, that there is a right to a speedy appeal, at least to the extent that a person is not prejudiced. And I would ask to reserve the remainder of my time. Thank you. Thank you. Okay. Mr. Morgan. May it please the Court, my name is Hollis Costin. I'm an assistant attorney general representing Respondent Richard Morgan. First, with the permission of this Court, I would like to address the questions that this Court asked the opposing counsel. Number one is one of the contentions of Mr. Gonzalez is that he needs an evidentiary hearing in federal district court because to explore whether there was a breakdown in attorney-client relationship, I would submit that under clear case law in this circuit, as well as the ADEPA standard, no federal evidentiary hearing is warranted. There are a couple of reasons for that. One is that the ADEPA standard states that if applicant, that the federal evidentiary hearing is prohibited if applicant fails to develop the factual basis for the claim. And Baca v. Ducharme, that's a 1999 case, states that only where applicant diligently sought to develop factual basis for the claim, that's when the evidentiary hearing is warranted. Number one, there is no indication that Mr. Gonzalez actually diligently tried to develop the claim. He never raised the claim in his direct appeal. In his personal restraint petition, although he filed a 140-page personal restraint petition and about 100 pages of exhibits, he devoted exactly one line to an evidentiary hearing request. He only stated evidentiary hearing, that he requested evidentiary hearing to fully develop issues, and that was it. The review of his PRP shows that this one-line request was a mere formality because looking at the volume of the exhibits that Mr. Gonzalez submitted, it's clear that he Another point, that if the record is sufficiently developed, then there is no need for evidentiary hearing. And finally, under the recent cases from this circuit, Lambert v. Blodgett and Buckley v. Terhune, there is no requirement that the State conducts a State evidentiary hearing on the issue before this Court can give deference, not can, excuse me, should give deference to the State court adjudication of the claim on the merits. The State evidentiary hearing is not a prerequisite for the ADIPA 2254D standard to apply. And it seems like Mr. Gonzalez is making an argument that since there was no State evidentiary hearing on the issue, then this Court must reverse to the Federal District Court. And that's not the standard in this circuit. Also, as I mentioned earlier, the record is sufficiently complete, and it shows that there was no breakdown of attorney-client relationship. Even if this Court was to look at the merits of the claim, it is clear that Mr. Gonzalez was clearly unhappy by the by his attorney. Is the argument that the attorney-client relationship somehow broke down and something should flow from that, is that even before us? Is that an issue on appeal? No, Your Honor. I was just issuing the District Court. Yes, Your Honor. I agree that there was no breakdown of the attorney-client relationship. There is no – it's not even in an effective assistance of counsel claim. Therefore, it's not – it's not an issue before this Court to begin with. Also, I would like to – one of the claims that Mr. Gonzalez was making is that his counsel provided an effective assistance of counsel at trial by not securing the expert soon enough. And this allegedly led to breakdown of the attorney-client relationship. First, I would like to say that because there were – this is an Adeepa case, and there was a State court adjudication of the claim on the merits, and the State court did apply the Stickland v. Washington United States Supreme Court case law to that issue. That adjudication was not contrary to or in the reasonable application of clearly established Federal law as determined by the United States Supreme Court. Therefore, this Court should defer to the State court's adjudication of the claim on the merits. In the alternative, even if this Court was to address the issue, the records supplied by Mr. Gonzalez indicate that Mr. Gonzalez himself made an intelligent, voluntary, and knowing decision to proceed to trial without being evaluated by the expert. His counsel was against that. He literally implored him to be evaluated and asked for continuance, but Mr. Gonzalez just let out refused. The trial court also counseled Mr. Gonzalez and told him that it was really not – considering the severity of the charges against him, it was not in his best interest, but Mr. Gonzalez persisted. And therefore, because he did it clearly contrary to his counsel's advice, counsel's performance was reasonable, and Mr. Gonzalez was not prejudiced by counsel's actions. I would like to briefly summarize my argument on the rest of the issues. Mr. Gonzalez failed to properly exhaust his ineffective assistance of counsel on the appeal claim because he failed to properly present it to the Washington Supreme Court. He tried to – When you say he failed to properly present it, what do you mean by that? He did mention it, right? He listed it as one of his claims. Yes, Your Honor, but – What does he have to do to properly present it besides that? He tried to incorporate the argument by reference, which is particularly obvious in light of the fact that the rest of the claims that he presented to the Supreme Court were fully developed. He presented the factual and legal authority. And, however, in regard to that particular claim, he simply said something to the effect of that a two – the Supreme Court just look at my appellate briefs, and this is clearly not sufficient for proper presentation of the claim on the merits. Well, is that – is that a rule that's clearly established in the context of this case? In other words, the reason he said that is because, well, how many lawyers did he have on appeal? Four or five? He said, you know, I have four or five lawyers on appeal, and, you know, I have these arguments against each one. So I want you to look at my earlier briefs in regard to each one. Is there any case that addresses that kind of a situation? Well, Your Honor, I believe that Baldwin v. Reese specifically states that it doesn't matter how many – yes, Mr. Gonzalez did have three lawyers on appeal, but he still had to specifically outline factual and legal authority for each claim. He cannot just refer to the lower court briefs. This is not sufficient for proper presentation of the claim. Also, Respondents – Respondent argues that Stone v. Fowler doctrine bars Mr. Gonzalez's Fourth Amendment claim from being considered by this Court. There was no Brady v. Maryland violation because the State disclosed the toxicology reports three weeks prior to Mr. Gonzalez's trial. And finally, because the United States Supreme Court never ruled that Barker v. Wingo speedy trial rights test applies to delayed State appeals, the State court's denial of the claim after adjudication of the claim on the merits cannot be contrary to quite an unreasonable application of newly established Federal law. And does this Court have any questions for me? At this point, I conclude my argument. Thank you. Thank you. Just very briefly, to respond to the question by Judge Tashima, I can't find any cases that, although the State keeps trying to say it's prohibited to have any sort of incorporation by reference, and there was a very specific incorporation by reference in this case, there's simply no cases that say that this is prohibited. The one case, none of the rules that the State cites in its brief prohibit under Washington appellate practice incorporation by reference. And the case cited by the State refers to someone trying to expand the record on appeal before the Supreme Court, not a person trying to simply refer the courts to specific allegations by incorporating a brief. Given that this was not a summary denial, given that the State Supreme Court did not say we're denying review because you haven't comported with our rules, it is apparent that they read the State appellate court decision which provided a discussion. All that's required is that there be fair notice. There was fair notice to the State Supreme Court in this case that Mr. Gonzales was raising a Federal claim regarding ineffective assistance of appellate counsel and the general nature of that claim. And that's all that needs to be done. That's all I have. Thank you. Thank you.
judges: Fernandez, Tashima, Gould